## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

COCO RICO, LLC

Plaintiffs,

v.

UNIVERSAL INSURANCE COMPANY

Defendants.

CIVIL NO.

JURY DEMAND

## COMPLAINT

**TO THE HONORABLE COURT**:

COMES NOW Plaintiff, COCO RICO, LLC ("Plaintiff" or "the Insured"), by and through its undersigned counsel, and before this Honorable Court respectfully allege and pray:

1.      This is an action to enforce a commercial business interruption insurance policy issued by Defendant to the Insured.

### I. Parties

2.      Plaintiff is a Limited Liability Company organized and authorized to conduct business in Puerto Rico. Plaintiff's only member, Mr. Richard Hahn, is domiciled in the state of New York, USA.

3.      Defendant, Universal Insurance Company ("Universal") is an insurance corporation organized and authorized to do business under the laws of the of Puerto Rico.

1

4.      Universal Insurance has its principal place of business and is incorporated in Puerto Rico

## II. Jurisdiction and Venue

5.      This Court has personal jurisdiction over the Insured.

6.      This honorable court has diversity jurisdiction over the instant complaint, since the sole member of plaintiff is domiciled in the State of New York , and Universal Insurance Company is a Puerto Rico corporation, with principal place of business also in Puerto Rico.

7.      This Honorable Court has subject matter jurisdiction to entertain the instant case pursuant to *28 U.S.C. section 1332* because this is a case or controversy between citizens of different states and the amount in controversy is in excess of seventy five thousand dollars ($75,000.00), exclusive of interest and costs.

8.      This Court has personal jurisdiction over Universal because it is a Puerto Rico corporation with its principal place of business in Puerto Rico.

Venue is proper in the United States District Court for Puerto Rico pursuant to 28 U.S.C. §1391(a) and (b) because Defendant's principal place of business is in this district and because the events and transactions giving rise to this action occurred in this district.

## III.  Tolling of the Statute of Limitations

9.      A prior complaint was filed by plaintiff against defendant in the Court of First Instance, Superior Court of Humacao, case number HU2020cv00745 on August 11, 2020.  Said case was at early stages and was voluntarily dismissed by plaintiff without prejudice.  The Honorable Superior Court, Humacao Section, due to a petition made by plaintiff, issued judgment dismissing the State Court case without prejudice on August 12, 2021.

### III. General Allegations Common to All Counts

#### A. The Property

10.     Plaintiff, prior to hurricane Maria operated a beverage manufacturing company in Duque Industrial Park, Lot 1, PR-13 & PR-971, Municipality of Naguabo, PR 00718. Among the products manufactured in the facility is the beverage called Coco Rico. (hereinafter referred to as "the Property")

#### A. The Policy

11.     On or about May 12, 2017, Universal issued commercial policy number 09-560-000548814-2, effective from May 12, 2017 through May 12, 2018, to the Insured (the "Policy").

12.     The Named Insured under the Policy is Richard Hahn and/or Coco Rico, LLC.

13.     The Policy included, *inter alia*, a (1) Business Income (and Extra Expense) Coverage Form with an agree value of $750,000.00 per occurrence, and (2) a claims preparation expense coverage form with Coverage up to $50,000.

#### i.  Business Interruption

14.     Pursuant to the "Business Income (and Extra Expense) Coverage Form" of the Policy at Section A(1), the Policy provided coverage for loss of "Business Income" as described in the Declarations."

15.     "Business Income" is defined, in the Business Income (and Extra Expense)

3

Coverage Form at Section A(1), as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and continuing normal operating expenses incurred, including payroll."

16.     "Suspension" is defined, in the Business Income (and Extra Expenses) Coverage Form at Section F(6), as "the slowdown or cessation of your business activities."

17.     "Operations" is defined, in the Business Income (and Extra Expenses) Coverage Form at Section F(2), as "business activities occurring at the described premises."

## ii.  Extra Expenses

18.     Pursuant to the "Business Income (and Extra Expenses) Coverage Form" of the Policy at Section A(2), the Policy provides coverage for "Extra Expenses."  The policy also provided for Commercial Extension Endorsement as per the terms of the policy.

19.     "Extra Expenses" are defined as "necessary expenses you incur during the 'period of restoration' (other than to repair or replace property) that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss" and which are incurred to "(1) avoid or minimize the 'suspension' of business and to continue operations at the described premises;" or "(2) "minimize the 'suspension' of business if you cannot continue 'operations.'"

20.     Extra expenses would also include expenses to "to repair or replace property . . . to the extent it reduces the amount of loss that would be payable under the [Business Income (and Extra Expenses) Coverage Form.]."

### iii.    Utility Services – Time Element Endorsement Form

21.    Pursuant to the "Utility Services – Time Element Form" of the Policy at Section A, the Policy's Business Income (and Extra Expenses) Coverage "is extended to apply to a "suspension" of "operations" at the described premises caused by an interruption in utility services to that premises."

### B. The Insurance Claim

22.    On September 20, 2017, Hurricane María struck Puerto Rico as a Category 4 hurricane and caused widespread damage to the island.

23.    During this time, the Insured's building located on the Property suffered direct physical loss because of the windstorm.

24.    The damages suffered to the Property were of such magnitude that Universal declared the Property as a total loss.

25.    The Insured also suffered loss of business income as a result of the damages to the buildings and business personal property, which forced the suspension of business activities.

26.    As a result of the above damages, the Insured has also incurred and paid Extra Expenses, as defined in the Policy, to reduce loss, and expenses to mitigate, prevent or reduce direct physical loss and expenses in the preparation of its insurance claim.

27.    The Insured suffered Business Interruption (and Extra Expense) damages in excess of **$900,000,** plus claim preparation expenses in excess of $40,000.

### C. Universal's Failure to Adjust and Resolve the Claims

28.    The Insured timely and properly put Universal on notice of its claims for the losses sustained to its buildings, business personal property, and business income.

29.     Additionally, the Insured immediately began exhaustive investigation to document its various damages to support its claims, including obtaining assessments of the physical damage to the buildings; documenting inventories of damaged business personal property; and securing calculated evaluations of the business income losses.

30.     Further, it is undisputed that the policy premiums were fully paid, and that the Policy was in full force and effect at the time of the loss.

31.     Nevertheless, Universal has failed to pay the Business Interruption (and Extra Expense) losses suffered by the Insured which are covered under the Policy as well as claim preparation expenses incurred.

32.     Instead, Universal has failed to act reasonably and promptly and/or has unreasonably delayed adjusting the Business Interruption (and Extra Expense) claim.

33.     Universal has also not acted in good faith to make a rapid, fair, and equitable adjustment of the Business Interruption (and Extra Expense) claims when responsibility is clearly present, nor the payment of the claim preparation expenses.

34.     Plaintiff timely and properly put Universal on notice of a comprehensive Business Income (and Extra Expense) Loss Evaluation report claim.

35.     Plaintiff timely and properly disclosed to Universal numerous documents regarding the Business Income (and Extra Expense) losses and submitted to Universal a vast number of documents that were demanded.

36.     After providing additional information and documentation to Universal, as well as a supplemental documentation showing that the total loss income suffered by the Insured was in excess of **$900,000.00**, Universal advised of its position that the Insured suffered business income and extra expense damages of only $203,338.59.

37.     As of the filing of the lawsuit, the business interruption claim remains

unresolved.

38.     As stated above, Universal has undermined the reality of the damages suffered by Insured. Universal's valuation of the damages suffered by the Insured is entirely unreasonable, and is clearly against the term of the insurance contract and applicable Puerto Rico Law and regulations.

## D.     Notice of Claim

39.     Universal, by its actions, has violated provisions of the Puerto Rico Insurance Code  and  has undertaken unfair claim adjustment practices including, but not limited to, the following:

   a.  unreasonably, inadequately and improperly investigating the Insured's claims and requests for insurance coverage;

   b.  unreasonably delaying payment of the claim at issue after numerous legitimate requests and communications from the Insured and its representatives;

   c.  unreasonably delaying its response to legitimate requests and communicationsfrom Plaintiffs and their representatives;

   d.  failing to produce information it obtained on the property and the claim after numerous legitimate requests and communications from the Insured and its representatives;

   e.  failing to pay the Insured's insurance coverage claim on the basis of the size and type of claim, rather than on the particular facts of the claim.

   f.  violating applicable statutory provisions governing the business of insurance, including Puerto Rico Insurance Code 26 L.P.R.A. §§ 2702; 2716(a), (b), and (f);

g.  committing unfair and deceptive acts and practices in the handling of the Insured's claims, including but not limited to misrepresenting that it would act expeditiously to resolve the claims, that it was actively investigating the Insured's building claim for months and then indicating that it was assigning a new expert to reevaluate from the beginning, and that it was not disputing claims that it ultimately disputed in violation of 26 L.P.R.A. § 2716(a);

h.  failing to plan for, adopt and implement reasonable methods for the expeditious investigation of claims in violation of 26 L.P.R.A. § 2716(a)(3).

i.  refusing to pay a claim without carrying out a reasonable investigation based on the information available in violation of 26 L.P.R.A. § 2716(a)(4);

j.  refusing to confirm or deny coverage of a claim within a reasonable term afterthe proof of loss and related materials were completed in violation of 26

    L.P.R.A. § 2716(a)(5);

k.  failing to attempt in good faith to make a rapid, fair and equitable adjustment of a claim when responsibility was clearly present in violation of 26 L.P.R.A. §2716(a)(6);

l.  compelling the Insured to institute litigation to recover amounts due under the terms of a policy, calculating the claim at substantially less than the amount which will ultimately be recovered in actions brought, and/or by wrongfully failing to pay the claim in violation of 26 L.P.R.A.

§ 2716(a)(7);

m.  attempting to settle a claim for less than the amount to which the claimant or insured is reasonably entitled,  in violation of 26 L.P.R.A. § 2716(a)(8);

n.  refusing to settle rapidly when Universal's responsibility is clearly and reasonably established under at least part of the coverage for the purpose of inducing Plaintiffs to settle under another part of the coverage of the Policy in violation of 26 L.P.R.A. § 2716(a)(12);

o.  refusing to offer a reasonable explanation of the terms of the Policy with regard to the facts and the law applicable so as to refuse a claim or an offer of transaction in violation of 26 L.P.R.A. § 2716(a)(13);

p.  delaying an investigation or the payment of the claim by requiring the Insured to submit substantially the same supporting documentation multiple times in violation of 26 L.P.R.A. § 2716(a)(14);

q.  failing to pay the claim on the pretext of insufficient information when the same was and/or could have been acquired by Universal and their representatives through regular investigation methods in violation of 26 L.P.R.A. §2716(a)(17);

r.  requiring unreasonable conditions in order to conduct or delay the claim  adjustment in violation of 26 L.P.R.A. § 2716(a)(20);

s.  failing to investigate, adjust and resolve Plaintiffs' claims, including any undisputed part thereof, in the shortest reasonable period of time within ninety (90) days after submission and/or, upon information or belief, failing to maintain documents attesting to the existence of a just cause to

exceed this timeperiod in violation of 26 L.P.R.A. § 2716(b); and

t.   refusing to issue payments corresponding to items of the claim in which there is no controversy and refusing to pay additional advances and/or pay part of theclaim, despite the fact that the Insured provided Universal with all the documentation required in the Policy in violation of 26 L.P.R.A. § 2716(f).

40.   As a result of the actions, lack of actions by, and lack of compliance with policy terms by  Universal, the Insured had no choice but to institute the current legal process.  Universal is obligated to pay plaintiff the amount owed as per the policy plus reasonable attorneys' fees.

## BREACH OF CONTRACT AND DAMAGES ARISING THEREOF

41.   Plaintiff reincorporates by reference the allegations set forth in Paragraphs  1through 40 above.

42.   Universal issued the Policy to the Insured and, pursuant to the terms of the Policy, agreed to pay the Insured the agreed value to compensate for all lost business income; and to reimburse all extra expenses paid and/or incurred, which losses are covered under the Policy, as aresult of direct physical loss, including an additional utility services endorsement.

43.   Pursuant to the terms of the Business Income (and Extra Expense) Coverage Form and the Utility Services Endorsement, the Policy provides coverage for loss of "business income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration' . . . caused by direct physical loss of or damage to property at premises which are described in the Declaration." "Business

Income" is defined, in the same form, as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and continuing normal operating expenses incurred, including payroll."

44.     Additionally, pursuant to the Business Income (and Extra Expenses) Coverage Form at Section A(2), the Policy also provides coverage for "extra expenses," which are defined as "necessary expenses you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss." Under Section A(2)(b), extra expenses include expenses to "(1) [a]void or minimize the 'suspension' of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location" and to "(2) [m]inimize the 'suspension' of business if you cannot continue 'operations.'"

45.     As such, there should be no dispute that there is coverage under the Policy for the Business Interruption (and Extra Expense) claims, and claim preparation expenses.

46.     The Insured has satisfied all conditions for coverage under the Policy.

47.     Despite coverage under the Policy, Universal has breached its contractual obligations to the Insured by underestimating Insureds damages and refusing to pay for all business income and extra expenses losses suffered as a result of Hurricane María and claim preparation expenses.

48.     As a direct and proximate result of Universal's breaches, the Insured has been deprived of the benefit of insurance coverage for which it paid substantial premiums and has suffered substantial direct and consequential damage, including loss

of the amount of its damages that should have been paid under the Policy as well as costs, expenses, and legal fees.

49.     Consistent with the foregoing and in view of Universal's breaches of its contractual obligations, the Insured seeks the entry of an order for specific compliance with the agreements under the Policy, and the payment of late interest accrued and yet to be accrued.

50.     Art. 1054 of the Civil Code, 31 L.P.R.A. § 3018, in effect at the time of the loss, provides that "[t]hose who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby."

51.     Article 1054, ante, obligates the parties to fulfill the promises to which they agreed to be bound, particularly when the parties have agreed contractually.

52.     Two types of damages can be considered in a claim for contractual damages, as provided by Art. 1059 of the Civil Code, which provides that "[i]ndemnity for losses and damages includes not only the amount of the loss which may have been suffered, but also that of the profit which the creditor may have failed to realize, reserving the provisions contained in the following sections." 31 L.P.R.A. § 3023.

53.     In this case, Universal's contractual breach in unreasonably delaying the adjustment and payment of the Claim has caused further damages to the Insured estimated in excess of **$250,000.00.**

54.     Therefore, the Insured also requests all damages stemming from Universal's breach of contract, to compensate for all lost business income; and to reimburse all extra expenses paid and/or incurred by the Insured, which losses are

covered under the Policy, all of which were foreseeable to Universal at the time it entered into the Policy with the Insured.  The insured also requests that defendant also be ordered to pay all claim preparation expenses, as per the insurance policy in effect at the time of the loss.

55.     Plaintiff requests a jury trial in all matters so triable.

**WHEREFORE**, The Insured requests that judgment be entered in their favor and against Defendants, Universal, as follows:

(a) awarding the Insured the covered business income and extra expenses losses suffered, as per the policy limits, **$750,000.00**

(b) awarding the Insured compensatory and consequential damages in an amount in excess of $**250,000.00;**

(c) awarding the Insured the policy covered claim preparation expenses in the amount of **$50,000.00**

(d) awarding the Insured pre-and post-judgment interest and the costs and expenses incurred in bringing this action, including reasonable attorneys' fees; and (c) awarding the Insured such other and further relief as the Court may deem just and proper.

In  San Juan, Puerto Rico this 20th day of August, 2021.

**RIVERA-ASPINALL, GARRIGA
& FERNANDINI, PSC**
1647 Calle Adams, Summit Hills
San Juan, Puerto Rico 00920
Tel. 787 792 8644
Fax (787)792-6475

*S/Eduardo R. Jenks Carballeira*
EDUARDO R. JENKS CARBALLEIRA
USDC PR No.  300110
edjneks@yahoo.com

*S/ Julián R. Rivera Aspinall*
Julian R. Rivera Aspinall
USDC PR No. 208506
aspinall@ragflaw.com