IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| COCO RICO, LLC., <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSAL INSURANCE COMPANY, <br><br> Defendant. | CIVIL NO.: 21-1390 (MEL) |

**OPINION & ORDER**

I.   **Procedural Background**

On August 20, 2021, Plaintiff Coco Rico, LLC ("Plaintiff") filed a complaint against Defendant Universal Insurance Company ("Defendant") alleging that Defendant failed to pay Plaintiff for lost business income "[p]ursuant to the terms of the Business Income (and Extra Expense) Coverage Form" ("the policy") held with Defendant after a beverage manufacturing facility which Plaintiff operated in Naguabo, Puerto Rico ("the Naguabo Plant") was destroyed in Hurricane María in September 2017. ECF No. 1 at 3, 10.[1] Pending before the court is Defendant's motion *in limine* to preclude Plaintiff from introducing the expert testimony of Mr. Roque Pérez Frangie ("Mr. Pérez") and his report at trial, arguing under <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and Federal Rule of Evidence 702 that Mr. Pérez's expert report and testimony at trial are "based on incorrect premises that are directly contradicted by the facts of the instant case, and therefore it would mislead the trier of facts."[2] ECF No. 53 at

---

[1] Following the pretrial and settlement conference, Plaintiff voluntarily desisted from an additional claim based on claim preparation expenses. ECF No. 63; <u>see</u> ECF No. 68.
[2] Defendant also makes passing reference to Federal Rules of Evidence 104(a) (admissibility) and 403 (relevance).

1, 4–6. Plaintiff filed a response in opposition to Defendant's motion *in limine*, and Defendant subsequently filed a reply. ECF Nos. 58, 70.

## II. The Expert Report

Mr. Pérez's curriculum vitae indicates that he is a licensed professional engineer with extensive engineering experience since graduating in 1971 with a Bachelor of Science degree in civil engineering. ECF No. 53-1 at 840. Defendant's objections and arguments with regard to Mr. Pérez are based on an expert report which Mr. Pérez prepared on February 25, 2022. ECF No. 53-1 at 2–12. Mr. Pérez's expert report explains that he agreed to give his "expert opinion as to determine the duration for the reconstruction of [Plaintiff's] Production Plant facilities, after the damages caused by Hurricane María." ECF No. 53-1 at 5. His report used the "Critical Path Method", the "standard procedure to scientifically assess the duration of projects", in order to "estimate the duration to reconstruct the Coco Rico Plant facilities in a reasonable way[.]" ECF No. 53-1 at 8. In creating his expert report, Mr. Pérez informed that he used the complaint filed by Plaintiff, the parties' joint case management memorandum, the insurance claim file, and the insurance policy held by Plaintiff with Defendant, which includes the "Business Income (and Extra Expense) Coverage Form." ECF No. 53-1 at 11, 624–32. His report, dated February 25, 2022 concludes that the reconstruction of the Naguabo Plant "will take at least 781 calendar days (approximate[ly] 25.67 months)" and estimates "that production could be up and running by November 8, 2019." ECF No. 53-1 at 8.

## III. Legal Standard

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court "vested in trial judges a gatekeeper function, requiring that they assess proffered expert scientific testimony for reliability before admitting it." Milward v. Acuity Specialty Prod. Grp.,

Inc., 639 F.3d 11, 14 (1st Cir. 2011). Rule 702 of the Federal Rules of Evidence was amended to reflect the Supreme Court's decision in Daubert. Fed. R. Evid. 702 advisory committee's note to 2000 Amendments ("Rule 702 has been amended in response to [Daubert], and to the many cases applying Daubert, including [Kumho, 526 U.S. 137 (1999)]."). Rule 702 provides that:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)–(d). For an expert opinion to be admissible, it must be relevant under Federal Rule of Evidence 402, and also must meet the "special relevancy requirement" in the "incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue[.]" Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998).

### IV.    Analysis

Defendant contends that Mr. Pérez's testimony and his expert report should be excluded from trial because Mr. Pérez "did not reliably apply the principles and methods to the facts of the case" and therefore his testimony "would mislead the trier of facts." ECF No. 53 at 8. Defendant does not challenge the Mr. Pérez's credentials or the reliability of the so-called "Critical Path Method" which Mr. Pérez used to arrive at his estimate regarding how long it would take to have the Naguabo Plant up-and-running. See ECF No. 53 at 1–11; ECF No. 70 at 1–9. Instead, Defendant's argument as to Mr. Pérez is that his testimony is "irrelevant" and "inadmissible" because the methodology used is "not based on the actual facts of the case" and is based instead on "incorrect premises that are directly contradicted with the facts of this case." ECF No. 53 at 8;

3

ECF No. 70 at 1–2. Plaintiff responds that Defendant fails to challenge Mr. Pérez's Critical Path Method as a valid scientific and industrial standard, and argues that by emphasizing the facts of the case, Defendant's Daubert motion is really an improper attempt to impeach Mr. Pérez. ECF No. 58 at 1–2, 8.

### A. Plaintiff's Operations at the Naguabo Plant

Defendant first argues that Mr. Pérez's expert report violates Federal Rule of Evidence 702(d) because it assumes that "Plaintiff could and would have reconstructed the Naguabo Plant and resumed operations therein" when in reality Plaintiff could not have reconstructed the Naguabo Plant. ECF No. 53 at 8. Defendant argues that undisputed evidence shows (1) that Plaintiff did not own and only had a lease agreement over the Naguabo Plant which had expired by the time of Hurricane María; (2) Plaintiff's landlord at the Naguabo Plant had begun eviction proceedings against Plaintiff by the time of Hurricane María; and (3) after Hurricane María, Plaintiff admitted to having abandoned the Naguabo Plant in litigation before a court of the Commonwealth of Puerto Rico. ECF No. 53 at 8–9. Plaintiff responds that the facts raised by Defendant are irrelevant, citing to the provisions of the insurance policy to argue that Plaintiff did not have to literally remain and rebuild the Naguabo Plant to assert a claim under the policy. ECF No. 58 at 6–7, 8.[3] It is undisputed that Plaintiff is not the owner of the Naguabo Plant. The parties' arguments can therefore be reduced to a dispute of contract interpretation: Whether the

---

[3] Plaintiff argues, for example, that Defendant "supports their flawed reasoning on numerous inadmissible commercial litigation informative motions from a state court case that was dismissed because the case became moot." ECF No. 58 at 8. However, under Federal Rule of Evidence 801, a statement made in filings in state court cases may be admissible as an opposing party statement when it "is offered against an opposing party and . . . was made by the party in an individual or representative capacity" or is a statement "that the party manifested that it adopted or believed to be true," or "was made by the person whom the party authorized to make [the] statement . . . or was made by the party's agent or employee." Fed. R. Evid. 801(d)(2)(A)–(D); Jones v. Jasper Wyman & Son, 2022 WL 16819057 at *4 (D. Me. Nov. 8, 2022) ("Mr. Jones argues that statements made by Mr. Jones in the state court complaint are inadmissible hearsay. The Court disagrees. Mr. Jones is an opposing party to Jasper Wyman and the allegations made in the state court action are statements made by Mr. Jones within the meaning of Rule 801(d)(2).")

4

compensation to which Plaintiff would be entitled under the business income interruption policy required Plaintiff to have, at the time of the passing of Hurricane María, a valid lease to run its operations at the Naguabo Plant.

"The construction of an insurance policy is a question of law" and in a diversity action such as this one, the relevant law is that of the Commonwealth of Puerto Rico. Zurich Am. Ins. v. Lord Elec. Co. of Puerto Rico, 986 F. Supp. 2d 104, 110 (D.P.R. 2013), as corrected (Dec. 20, 2013) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78, (1938)). Puerto Rico law provides that "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy." 26 L.P.R.A. § 1125. Therefore, "absent an ambiguity, courts must interpret the insurance contract according to its 'plain meaning, as a whole, and in harmony with the general purposes of the policy.'" Zurich Am. Ins., 986 F. Supp. 2d at 110 (citing Jewelers Mut. Ins. Co. v. N. Barquet, Inc., 410 F.3d 2, 16 (1st Cir. 2005)).

The language in a policy is ambiguous "if a word or phrase is reasonably susceptible to more than one construction." López & Medina Corp. v. Marsh USA, Inc., 667 F.3d 58, 64 (1st Cir. 2012). If the contract is ambiguous "the intention of the parties' controls" which "can be demonstrated by their conduct, both prior and subsequent to the contract." Puerto Rico Elec. Power Auth. v. Philipps, 645 F. Supp. 770, 773 (D.P.R. 1986). In such cases of ambiguity, "extrinsic evidence may be considered to determine the intention of the parties." Autoridad de Carreteras y Transportacion v. TransCore Atl., Inc., 387 F. Supp. 3d 163, 169 (D.P.R. 2017). Unless extrinsic evidence is "so one-sided that no reasonable person could decide the contrary," such evidence may be admissible to submit to the factfinder for consideration, including to a jury sitting in the U.S. District Court for the District of Puerto Rico. Id. ("[E]xtrinsic evidence of the true meaning of the contract should go to the factfinder, here the jury, in order to determine who

owns the CSC equipment."); Comite Fiestas De La Calle San Sebastian, Inc. v. Cruz, 170 F. Supp. 3d 271, 275 (D.P.R. 2016) ("extrinsic evidence of the parties' intent would require evaluation by a jury."); López & Medina Corp. v. Marsh USA, Inc., 694 F. Supp. 2d 119 (D.P.R. 2010), aff'd, 667 F.3d 58, 125 (1st Cir. 2012) ("the Court can now delve into the Policy's specific language and decide whether to admit extrinsic evidence to interpret any ambiguous terms in line with the parties' intent.").

Even so, under Puerto Rico law, "[i]nsurance contracts generally are viewed as adhesion contracts" which requires the court to interpret such policies with a "liberal construction in favor of the insured" Zurich Am. Ins., 986 F. Supp. 2d at 111 (internal citations omitted); Metlife Cap. Corp. v. Westchester Fire Ins. Co., 224 F. Supp. 2d 374, 382 (D.P.R. 2002) ("if there exists any ambiguity, "it should be resolved in the manner least favorable to the insurer."); Lopez & Medina Corp., 667 F.3d at 64 ("[I]f the policy's language is cloudy, courts must construe the provisions against the insurer.") (internal quotations omitted). Here, based on the language of the contract, it is not evident that Mr. Pérez's opinions are based on faulty factual premises when he looked to the time it would take Plaintiff to restore operations at the Naguabo Plant.

### 1. The Policy Does Not Require Ownership or Even a Valid Lease for the Described Premises

First, Defendant argues that the fact that Mr. Pérez called the facilities the "Coco Rico Plant" and "their [Plaintiff's] Production Plant facilities" in his expert report shows that he wrongly believed that Plaintiff owned the Naguabo Plant rather than leasing it. ECF No. 70 at 3; see ECF No. 53-1 at 3, 5. However, there is nothing in the insurance policy which indicates that Plaintiff had to be the owner of the described premises in order to make a claim under the policy.[4] In fact, the policy contains provisions which contemplate the possibility that the insured

---

[4] It is also not unreasonable to describe the premises leased by a business as "their production facilities."

6

is neither the owner nor the holder of a valid lease over the premises in question. For example, the policy states, "if you [the insured] occupy only part of a building, your premises means: . . . the portion of the building which you rent, lease, or occupy[.]" ECF No. 53-1 at 624. The word "occupy" leaves open the possibility that the insured neither owns nor has a valid lease over the premises, but rather, is only physically occupying the premises described in the policy. No other provision of the contract requires that the insured hold a valid lease in order to be entitled to compensation under the policy. Therefore, because the insurance policy contract leaves room fro the scenario of an entity that occupies premises, regardless of ownership or lease, this concern in and of itself is insufficient to strike Mr. Pérez's testimony.[5]

    **2. The Policy Does Not Require the Insured to Resume Operations at the Described Premises or to Resume Operations At All**

Furthermore, even if Plaintiff had been evicted and abandoned the Naguabo Plant, the policy clearly contemplates that the insured is not required to restart operations in the <u>exact</u> described premises affected by the business interruption, nor is the insured required to resume operations at all in order to recover compensation. The insurance policy provides that Defendant "will pay for the actual loss of Business Income you [the insured] sustain[s] due to the necessary 'suspension' of your 'operations' during the 'period of restoration'." ECF No. 53-1 at 624. Under the policy for business income coverage, "Operations" are defined as the insured's "business activities occurring at the described premises." ECF No. 53-1 at 632. The "Period of Restoration" is defined as beginning "72 hours after the time of direct physical loss or damage" and ending "<u>on the earlier of</u> (1) the date when the property at the described premises should be repaired rebuilt or replaced with reasonable speed and similar quality; <u>or</u> (2) the date when

---

[5] Nevertheless, evidence that Plaintiff was being evicted and had abandoned the Naguabo Plant may be relevant to show Plaintiff's lack of intent to resume operations at the described premises and may provide support to show that Plaintiff resumed operations permanently, rather than temporarily, in another location, i.e. New Jersey.

business is resumed at a <u>new</u> permanent location." ECF No. 53-1 at 632 (emphasis added). Therefore, the policy recognizes that the insured may opt to permanently resume operations at a new, different location rather than the described premises. Furthermore, under the section of the policy titled "Loss Determination" the policy also provides that, "If you [the insured] do not resume 'operations', or do not resume 'operations' as quickly as possible[,] we [Defendant] will pay based on the length of time it would have taken to resume 'operations' as quickly as possible." ECF No. 53-1 at 629. Therefore, the policy recognizes that the insured may opt not to resume operations at all. In that case, the insured would only be entitled to compensation for the amount that it would have taken to restore the described premises to operations as quickly as possible.

### 3. Coverage is Nevertheless Calculated Using the Described Premises

Nevertheless, the calculation of business income loss in Plaintiff's claim must be based on some measuring stick. The policy indicates that the benchmark is always the described premises in the policy unless operations are resumed sooner and permanently elsewhere. As noted above, the policy provides that the interruption of operations is based on the "business activities occurring at the <u>described premises</u>" and the period of restoration is determined, either by "(1) the date when the property at the described premises should be repaired rebuilt or replaced with reasonable speed and similar quality" or on "(2) the date when business is resumed at a new permanent location." ECF No. 53-1 at 632. Therefore, construing the policy as a whole, these provisions establish that any business interruption calculation must be based on an evaluation of the described premises in the policy, even if the insured does not resume operations at those described premises.

For example, if Plaintiff moved its operations to a new permanent location Plaintiff would only be entitled to compensation based either on the time it should have taken to make operational the premises described in the policy, or the time it took to resume operations at the permanent location, whichever is earlier. ECF No. 53-1 at 632. If, however, Plaintiff never resumed operations, Plaintiff would only be entitled to compensation for the cost it should have taken to restore the described premises "with reasonable speed and similar quality," not the cost it would have taken to restore a different, hypothetical location. Because the Naguabo Plant is the described premises under the policy, any compensation figure must be based on a calculation of "the length of time it would have taken to resume 'operations' as quickly as possible" at the Naguabo Plant. ECF No. 53-1 at 629. Therefore, there is no reason to strike Mr. Pérez's testimony simply because he calculated the time it would take to restore the Naguabo Plant to operations.[6]

### B.  Plaintiff's Resumption of Production in New Jersey

However, Defendant also argues that Mr. Pérez's conclusion regarding the time it would have taken to resume operations at the Naguabo Plant is faulty because "Plaintiff never stopped operating" and instead continued manufacturing its product at a plant in New Jersey as soon as October 2017 after Hurricane María. ECF No. 53 at 9–11. Defendants raise a salient point, as the policy clarifies that the "period of restoration" ends on the earlier of two dates: either "(1) the date when the property at the described premises should be repaired rebuilt or replaced with reasonable speed and similar quality" or on "(2) the date when business is resumed at a <u>new</u> permanent location." ECF No. 53-1 at 632 (emphasis added). Furthermore, the policy also states that "[w]e will reduce the amount of your . . . [b]usiness [i]ncome loss . . . to the extent you can

---

[6] Whether the operations were resumed permanently elsewhere, however, is a fact in dispute. Disputed facts should not be confused with "faulty factual premises" for purposes of the admissibility of expert testimony.

resume your 'operations' in whole or in part by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere." ECF No. 53-1 at 629.

Defendant cites evidence wherein Plaintiff acknowledges that product manufacturing operations began in New Jersey after Hurricane María. Specifically, Defendant refers to an email where Defense counsel asked Plaintiff to provide the "address of the plant where it is manufacturing" product and "the exact date in which [Plaintiff] started manufacturing its [product] from the plant in New Jersey[.]" ECF No. 53-4 at 3. Plaintiff's counsel's email response identified the address of the plant in New Jersey as "712 Fellowship Road, Mt. Laurel, NJ 08054" and stated that the date manufacturing began at that location was October 18, 2017. ECF No. 53-4 at 2.

However, this above information is still not a basis to exclude Mr. Pérez's expert testimony entirely. None of the evidence cited by Defendant indicates irrefutably that Plaintiff intends or intended to continue production of its product "permanently" in New Jersey. Indeed, Plaintiff responds that its "continued operations in New Jersey . . . are irrelevant or outweighed by documents of more credibility available in the present case." ECF No. 58 at 9. Such questions must be left for trial. A jury may examine and weigh the evidence and conclude that Plaintiff's operations in New Jersey were "permanent" and therefore, that Plaintiff would only be entitled to compensation for the short period between Hurricane María in September 2017 and when Plaintiff began manufacturing in New Jersey in October 2017. The evidence at trial may also lead the jury to determine that Plaintiff's operations in New Jersey would merit a reduction in its business income loss under the policy. ECF No. 53-1 at 629 ("[w]e will reduce the amount of your . . . [b]usiness [i]ncome loss . . . to the extent you can resume your 'operations' in whole or in part . . . elsewhere."). Such questions, however, are best left to the jury in the calculation of

damages and may be used to discredit the conclusions of Mr. Pérez and reduce any award based on his calculations of the time it would take to resume operations at the Naguabo Plant. The factual disputes surrounding Plaintiff's New Jersey operations, however, are not a basis to exclude Mr. Pérez's testimony at trial.

## V. Conclusion

For the foregoing reasons, Defendant's motion *in limine* to exclude the testimony and expert report of Plaintiff's expert Mr. Pérez (ECF No. 53) is DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of May, 2023.

s/Marcos E. López
U.S. Magistrate Judge
